UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| **ROY HAMPTON** | § | |
| **Individually and on behalf of all others** | § | |
| **similarly situated,** | § | **DOCKET NO. _____** |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CLASS ACTION** |
| | § | **PURSUANT TO FED. R. CIV. P. 23** |
| | § | |
| **FOCUS OPTIMIZATION** | § | |
| **SOLUTIONS, INC.,** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| **Defendant.** | § | |

**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT**

### I.    SUMMARY

1.      Roy Hampton ("Hampton," "Plaintiff") brings this lawsuit against Focus Optimization

Solutions, Inc., ("FOS"), formerly known as Performance Fluids Management, to recover unpaid

overtime wages and other damages under the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111

*et seq.*, ("the Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code §4113.15 (the

Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and the

Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104. Hampton also brings

individual claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2.      Hampton and the other workers like him regularly worked for FOS in excess of 40

hours each week.

3.      But he and the workers like him never received overtime for hours worked in excess of

40 hours in a single workweek.

4.      Instead of paying overtime as required by the FLSA, the Ohio Acts, and the PMWA,

FOS paid these workers a daily rate with no overtime pay.

5.     FOS classified these workers as independent contractors.

6.     FOS did not pay these workers a guaranteed salary.

7.     Hampton worked with numerous individuals who were subjected to the same illegal compensation practices which denied him overtime as required by the FLSA, Ohio Wage Acts, and PMWA.

8.     This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these FOS workers.

## II.     JURISDICTION AND VENUE

9.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b). The Court also has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

10.     Venue is proper under 28 U.S.C. §§ 1391 (b) and (c) because FOS operates in this District and Division and because a substantial part of the events giving rise to this claim occurred in this District and Division.

## III.     THE PARTIES

11.     Hampton worked exclusively for FOS as a Field Services Coordinator during the relevant statutory time period.

12.     Throughout his employment with FOS, Hampton was paid a day rate.

13.     FOS did not pay Hampton overtime pay when he worked over 40 hours a week.

14.     FOS did not pay Hampton a salary of at least $455.00 a week.

15.     For example, Hampton worked for FOS from March 16, 2015 to March 24, 2015.

During that time period, he worked at least 12 hours days. And as a result worked overtime. He FOS, through its subsidiary Performance Fluid Management, only paid Hampton a day rate. It never paid Hampton overtime for the time worked nor a salary.

16.    Hampton's written consent is attached as Exhibit A.

17.    Hampton worked for FOS in this district and division.

18.    Hampton brings this action on behalf of himself and all other similarly situated oilfield workers who worked for or on behalf of FOS, who were classified as independent contractors without receiving overtime for hours worked in excess of forty (40) in a workweek, and did not receive a guaranteed salary of at least $455.00 a week.  The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former oilfield worker who worked for or on behalf of Focus Optimization Solutions, Inc. and its subsidiary Performance Fluids Management who were classified as independent contractors and paid a day-rate during the last three (3) years.** ("Putative Class Members")

19.    Hampton also seeks class certification of this class under Fed. R. Civ. P. 23 under the PMWA ("PMWA Class") and the Ohio Wage Acts "Ohio Class."

20.    The Putative Class Members are easily ascertainable from FOS's business records, particularly personnel records.

21.    Focus Optimization Solutions, Inc. may be served through its registered agent: **Mary Frances Vonberg at 333 N. Sam Houston Parkway, Suite 300, Houston, Texas 77060.**

22.    FOS purchased Performance Fluid Management, the company for which Hampton worked for part of the 3 year look back period.

23.    On information and belief, FOS owns all liabilities of Performance Fluid Management.

### IV.    COVERAGE UNDER THE FLSA

24.    At all times hereinafter mentioned, FOS has been an employer within the meaning of

3

the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25.     At all times hereinafter mentioned, FOS has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26.     At all times hereinafter mentioned, FOS has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

27.     At all times hereinafter mentioned, Hampton and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

28.     FOS treated Hampton and the Putative Class Members as employees and uniformly dictated the pay practices to which Hampton and its other employees (including its so-called "independent contractors") were subjected.

29.     FOS misclassification of Hampton and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA, Ohio Wage Acts, or the PMWA.

## V.     FACTS

30.     FOS describes itself as "speciali[zing] in the independent management of the entire drilling fluids package – muds, solids control and environmental waste management and containment." *See* http://www.focus-oandg.com/services (last visited April 13, 2018).

31.     To perform the services FOS markets on its website, FOS employs independent contractors, like Hampton.

32.     FOS pays its contractors a daily rate.

33.     FOS does not pay its day rate contractors overtime.

34.     FOS does not pay its day rate contractors a salary.

35.     FOS applies this pay practice to its operations nationwide.

36.     FOS operates throughout the United States, including Pennsylvania and Ohio.

37.     Hampton worked alongside other day rate contractors of FOS.

38.     Based on his experiences at FOS, Hampton knows that FOS paid other workers a day rate as independent contractors without overtime or a salary.

39.     The nature of Hampton's relationship with FOS is that of an employee/employer relationship.

40.     Specifically, the day to day activities of Hampton and the Putative Class Members were conducted within designated parameters defined by FOS.

41.     Hampton and the Putative Class Members were required by FOS to work well in excess of 40 hours each week.

42.     The work Hampton and the Putative Class Members performed was an essential part of FOS's core business.

43.     In fact, the work Hampton and the Putative Class Members performed was marketed on FOS's website.

44.     During Hampton's employment with FOS, while he was classified as an independent contractor, FOS exercised control over all aspects of his job.

45.     FOS told Hampton where to go, how to perform his job, the tools to use, and paper work to complete.

46.     FOS did not require any substantial investment by Hampton for him to perform the work required.

47.     In fact, FOS paid for all tools and equipment Hampton and the Putative Class Members used.

48.     Hampton was not required to possess any unique or specialized skillset to perform his job duties. Hampton's job was not one that required advanced training. In fact, FOS told Hampton exactly how it wanted the job completed.

49.     FOS determined Hampton's and the Putative Class Members' opportunity for profit and loss.

50.     FOS set the rates of pay applicable to Hampton and the Putative Class Members.

51.     FOS's pay rates were non-negotiable.

52.     FOS did not allow Hampton or the Putative Class Members to contract out work assigned to them.

53.     FOS did not require Hampton or the Putative Class Members to be responsible for financial losses incurred on its job sites.

54.     FOS required Hampton and the Putative Class Members to only work for it during their employment with FOS.

55.     Indeed, FOS controlled all the significant or meaningful aspects of the job duties performed by Hampton.

56.     FOS controlled all aspects of Hampton's job activities by enforcing mandatory compliance with FOS policies and procedures.

57.     Hampton and the Putative Class Members did not incur operating expenses like rent, payroll and marketing.

58.     Hampton was economically dependent on FOS during his employment.

59.     Indeed, the daily and weekly activities of Hampton and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by FOS.

60.     For the purposes of their overtime claims, the Putative Class Members performed substantially similar job duties related to servicing FOS's core business.

61.     Hampton and the Putative Class Members were not employed by FOS on a project-by-project basis.

62.     In fact, while Hampton was classified as an independent contractor, he was regularly on call for FOS and was expected to drop everything and work whenever needed.

63.     The Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week. Instead of paying them overtime, FOS paid the Putative Class Members a day-rate. FOS denied Hampton and the other Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

64.     FOS's policy of failing to pay its independent contractors, including Hampton, overtime violates the FLSA because these workers are, for all purposes, employees.

65.     Because Hampton was misclassified by FOS, he and the Putative Class Members should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

## VI.     FLSA VIOLATIONS

66.     As set forth herein, FOS violated the FLSA by failing to pay Hampton and the Putative Class Members overtime for hours worked in excess of forty (40) in a workweek. 29 U.S.C. § 207(a).

67.     FOS knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Hampton and the Putative Class Members overtime compensation. FOS' failure to pay overtime compensation was neither reasonable, nor was the decision not to pay overtime made in good faith.

68.     Accordingly, Hampton and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their regular rate of pay, plus liquidated damages,

attorney's fees and costs.

## VII.   PMWA ALLEGATIONS

69.     FOS is subject to the overtime requirements of the PMWA because FOS is an employer under 43 P.S. § 333.103(g).

70.     During all relevant times, Hampton and the PMWA Class were covered employees entitled to the above-described PMWA's protections.  See 43 P.S. § 333.103(h).

71.     FOS' compensation scheme that is applicable to Hampton and the PMWA Class failed to comply with either 43 P.S. § 333.104(c) or 34 Pa. Code § 231.43(b).

72.      The PMWA requires employers like FOS to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Hampton and each member of the PMWA Class are entitled to overtime pay under the PMWA.

73.      FOS has and had a policy and practice of misclassifying Hampton and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

74.      Hampton and each member of the PMWA Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

75.      Hampton and each member of the PMWA Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by FOS, as provided by the PMWA.

## VIII.   OHIO WAGE ACT ALLEGATIONS

76.     Hampton brings this claim under the Ohio Wage Act as a Rule 23 class action.

77.     The conduct alleged violates the Ohio Wage Act (O.R.C. §§4111).

78.     At all relevant times, FOS were and are subject to the requirements of the Ohio Wage Act.

79.     The Ohio Wage Act requires employers like FOS to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Hampton and the Putative Class Members are entitled to overtime pay under the Ohio Wage Acts.

80.     FOS had a policy and practice of misclassifying Hampton and each member of the Ohio Wage Act class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

81.     Hampton and the Putative Class Members seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

## IX.    CLASS AND COLLECTIVE ACTION ALLEGATIONS

82.     Hampton incorporates all previous paragraphs and alleges that the illegal pay practices FOS imposed on Hampton were likewise imposed on the Putative Class Members.

83.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, Ohio Wage Acts, and PMWA.

84.     Numerous other individuals who worked with Hampton indicated they were improperly classified as independent contractors, paid in the same manner, did not receive a salary, and were not properly compensated for all hours worked as required by state and federal wage laws.

85.     Based on his experiences and tenure with FOS, Hampton is aware that FOS's illegal practices were imposed on the Putative Class Members.

86.     The Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

87.     FOS's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

88.     Hampton's experiences are therefore typical of the experiences of the Putative Class Members.

89.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

90.     Hampton has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Hampton has an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

91.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

92.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and FOS will reap the unjust benefits of violating the FLSA and applicable state labor laws.

93.     Furthermore, even if some of the Putative Class Members could afford individual litigation against FOS, it would be unduly burdensome to the judicial system.

94.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

95.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

        a.     Whether FOS employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA, Ohio Wage Acts, and PMWA;

b. Whether the Putative Class Members were improperly misclassified as independent contractors;

c. Whether the Putative Class Members were paid a salary;

d. Whether FOS's decision to classify the Putative Class Members as independent contractors was made in good faith;

e. Whether FOS's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

f. Whether FOS's violation of the FLSA was willful; and

g. Whether FOS's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

96.     Hampton's claims are typical of the claims of the Putative Class Members. Hampton and the Putative Class Members sustained damages arising out of FOS's illegal and uniform employment policy.

97.     Hampton knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

98.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## RELIEF SOUGHT

99.     WHEREFORE, Hampton prays for judgment against FOS as follows:

a. An Order certifying a Rule 23 class action on behalf of all Putative Class Members who worked for FOS in Pennsylvania;

b. An Order certifying a Rule 23 class action on behalf of all Putative Class

Members who worked for FOS in Pennsylvania;

c.      An Order certifying a 216(b)collective action on behalf of all Putative Class Members who worked for FOS nationwide;

d.      Judgment awarding Hampton and the Putative Class Members unpaid back wages and for liquidated damages equal in amount to the unpaid compensation found due to FOS under the FLSA;

e.      Judgment awarding Hampton and the PMWA Class all unpaid overtime and other damages available under the PMWA;

f.      For an Order awarding Hampton and the Ohio Wage Act Class all unpaid overtime and other damages available under the Ohio Wage Act;

g.      For an Order awarding Hampton and the PMWA Class their costs of this action;

h.      For an Order awarding Hampton and the Ohio Wage Act Class their costs of this action;

i.      For an Order awarding Hampton and the Putative Class Members their costs of this action under the FLSA;

j.      For an Order awarding Hampton and the PMWA Class their reasonable attorneys' fees and expenses as provided by the PMWA;

k.      For an Order awarding Hampton and the Ohio Wage Act Class their reasonable attorneys' fees and expenses as provided by the Ohio Wage Act;

l.      For an Order awarding Hampton and the Putative Class Members their reasonable attorneys' fees and expenses as provided by the FLSA;

m.      Pre- and post-judgment interest at the highest rate allowable by law; and

n.      All such other and further relief to which Hampton and the other Putative

Class Members may show themselves to be justly entitled.

Respectfully submitted,

/s/ Andrew W. Dunlap
**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Jennifer M. Solak**
State Bar No. 24060634
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
jsolak@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas State Bar No. 24001807
(*Pending Pro Hac Vice*)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

**Joshua P. Geist**
PA. I.D. No. 85745
Goodrich & Geist, P.C.
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

13